PETER BARRETT MFG. CO. v. VAN RONK et al.

(Supreme Court, Appellate Division, Second Department.    February 16, 1912.)

CHATTEL MORTGAGES (§ 138*)—PRIORITY OF LIVERY STABLE KEEPER'S LIEN.

   Under Lien Law (Consol. Laws 1909, c. 33) § 183, giving a lien for
board of horses and storage of vehicles, a livery stable keeper is not
entitled to a lien on a truck beyond his reasonable charges for storing
it as against a chattel mortgage, recorded before the livery stable keep-
er came in possession of the truck, and is not entitled to hold the truck
for an unpaid balance due for boarding horses under an arrangement
made before the truck was bought.

   [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 228–
236; Dec. Dig. § 138.*]

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by the Peter Barrett Manufacturing Company against Fred
Van Ronk and another.   Judgment for defendant Everett E. Wheeler,
and plaintiff appeals.   Reversed and rendered.

Argued before JENKS, P. J., and THOMAS, CARR, WOOD-
WARD, and RICH, JJ.

Cyrus V. Washburn (George W. Sickels, on the brief), for appel-
lant.

Robert H. Wilson, for respondent.

WOODWARD, J.   This action was brought to enforce a purchase-
money chattel mortgage lien against defendant Van Ronk, mortgagor,
and the defendant Wheeler, a livery stable keeper in possession.
Plaintiff sold a single market truck to the defendant Van Ronk for
the sum of $300.   The delivery was made on the 6th day of August,
1909, and on that day the defendant Van Ronk executed a purchase-
money chattel mortgage, which was duly filed on that day and was
duly renewed on the 28th day of July, 1910.   On the 1st day of
August, 1909, the defendant Van Ronk brought seven horses and
harness and four trucks to the defendant Wheeler for board and stor-
age.   The rate of board was agreed upon at $25 per month for each
horse; no separate charge being made for the trucks and harness.
Prior to the commencement of this action, the defendant Van Ronk
took away all but two of the horses, harness, and one truck; the
defendant Wheeler surrendering the same.   The truck which was left
was the one on which defendant Van Ronk had given the chattel mort-
gage to the plaintiff.   On the 1st of December, 1910, the purchase
money being unpaid, demand was made for the truck.   The truck
being in the possession of the defendant Wheeler, a livery stable
keeper, the plaintiff on the 10th day of December, 1910, offered to pay
to the defendant Wheeler all his reasonable and proper charges for
the keeping and storing of the truck, but the defendant Wheeler re-
fused to surrender the same, claiming a lien thereon for the entire
bill contracted by the defendant Van Ronk for the board and storage
of the horses and trucks.   The only question of law in the case is
whether, under the lien law, the defendant Wheeler was entitled to

retain possession of the truck on which the plaintiff held a chattel mortgage for the payment of the debt of the defendant Van Ronk, who was the mortgagor in possession.

It does not clearly appear when the particular truck in question came into the possession of the defendant Wheeler, but it was not delivered to the defendant Van Ronk until the 6th day of August, 1909, at which time the chattel mortgage in question was given, and was duly filed upon that day. This being the case, the truck now under consideration could not have been one of the seven horses and harness and four trucks which were placed in the custody of the defendant Wheeler by the defendant Van Ronk, under an agreement that the defendant Van Ronk would pay to the defendant Wheeler $25 per month for the board of each horse; no separate contract being made in reference to the trucks. The rights of the defendant Wheeler, it would seem to us, were determined by the contract of August 1, 1909, five days before the defendant Van Ronk became the owner of the particular truck in question. He would undoubtedly have a lien upon the entire number of horses and trucks which were delivered to him at that time for the board of the seven horses. Section 183, Lien Law. We are inclined to the opinion that this lien would attach to the property thus delivered to such an extent that he might hold all or any of such property until all charges for board of the horses and for the storage of the trucks was paid, but the terms of the statute require, as a condition of any lien upon "any wagon, truck, cart, carriage, vehicle or harness, of any kind or description, stored or kept," that an express or implied agreement shall be made with the owners thereof, whether such owner be a mortgagor remaining in possession or otherwise, "for the sum due him for the care, keeping, boarding or pasturing of the animal, or for the keeping or storing of any wagon, truck, cart, carriage, vehicle and harness, under the agreement," etc. Here there was an express agreement that the defendant Wheeler was to be paid $25 per month for each horse, and the lien undoubtedly attached to each horse, and to each harness or truck delivered to the defendant Wheeler on the 1st day of August. But the truck involved in this litigation was not among the trucks so delivered, for it had not at that time been delivered to the defendant Van Ronk. When, on the 6th day of August, 1909, the plaintiff delivered the truck to Van Ronk, it was subject to a chattel mortgage, duly filed, and which gave notice to all of the world of the rights of the plaintiff in such truck. It does not appear that this truck was delivered to the defendant Wheeler with any express agreement as to the amount which should be paid for its storage, though there would probably be an implied agreement to pay the usual charges for such storage. But being delivered at a time subsequent to the contract by which the defendant Van Ronk had agreed to pay $25 per month for the board of each one of the seven horses, and when Van Ronk had only a qualified ownership in the chattel, it was not in his power to deal with the truck in a manner to involve it in the indebtedness previously contracted for by him. He could not sell the truck and pay the money over to Wheeler in discharge

of his own obligations. He could not give the truck to Wheeler in payment of his own debt, or in discharge of the obligation of the contract. How, then, could he, by merely delivering this truck for storage, give a lien upon it for the payment of the board and storage of property previously placed in the possession of the defendant Wheeler, and to which the lien had already attached? We think it is entirely clear that the lien law never contemplated such a result as this. If the truck had been a part of the group of chattels originally delivered to the defendant Wheeler, and he had, acting in good faith, held on to this particular truck for his debt, it might be that he would be entitled to hold it, but under the circumstances here disclosed we are clearly of the opinion that there could be no lien attaching to this particular truck, except for the reasonable charge of storage for the same.

The judgment appealed from should be reversed, and the plaintiff should have judgment directing the sale of the chattel and the disbursement of the fund in harmony with this opinion, with costs. All concur.